```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TYCO FIRE PRODUCTS LP           :    CIVIL ACTION
                                :    NO. 10-4645
       Plaintiff,               :
                                :
       v.                       :
                                :
VICTAULIC COMPANY,              :
                                :
       Defendant.               :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              OCTOBER 4, 2011

**I.    INTRODUCTION**

Plaintiff Tyco Fire Products LP ("Plaintiff") brings this patent infringement suit against Victaulic Company ("Defendant"). Plaintiff alleges that Defendant has infringed various claims in two of Plaintiff's patents (the "Asserted Patents"): (1) United States Patent Number 7,793,736 ("'736 Patent"), entitled "Ceiling-Only Dry Sprinkler Systems and Methods for Addressing a Storage Occupancy Fire"; and (2) United States Patent Number 7,819,201 ("'201 Patent"), entitled "Upright, Early Suppression Fast Response Sprinkler."  Pl. Second Am. Compl. ¶¶ 14-15, 24-25.  Defendant's answer pleads five affirmative defenses and asserts two counterclaims.  Def. First Am. Answer ¶¶ 29-39.  Before the Court is Plaintiff's motion to

stay this action pending the United States Patent and Trademark Office's ("PTO") resolution of reissue proceedings of the Asserted Patents.

For the reasons set forth below, Plaintiff's motion will be denied.

**II. BACKGROUND**

Plaintiff avers that Defendant's manufacture and sale of the Model LP-46 V4603 K25 Standard Response Storage Upright Sprinklers with varying temperature ratings infringes its patents. See Pl. Second Am. Compl. ¶¶ 14, 24. Defendant acknowledges manufacturing and marketing the products in question, see Def. First Am. Answer ¶¶ 13, 23, but denies Plaintiff's averments of patent infringement, see id. ¶¶ 14-18, 24-28. Defendant further raises a series of affirmative defenses and two counterclaims, both of which assert, in relevant part, that Plaintiff's '736 and '201 patents are invalid for failure to comply with the patentability requirements in 35 U.S.C. §§ 101, 102, 103, 112 (2006). See id. ¶ 39.

This Court set a scheduling order on March 29, 2011. ECF No. 30. Parties exchanged proposed claim constructions on July 29, 2011, and they filed a joint statement of terms to be construed with the Court on August 19, 2011. That same day, Plaintiff filed applications with the PTO seeking reissue of both

the '736 and '201 patents to correct "inadvertent errors" in the claims of those patents. Pl. Br. 4. Shortly thereafter, Plaintiff moved to stay the present litigation pending the outcome of these reissue proceedings. ECF No. 41. Defendant opposes this motion, and it is ripe for disposition.

**III. DISCUSSION**

    A.   <u>Applicable Law</u>

A reissue proceeding is an <u>ex parte</u> procedure that allows a patent owner to correct errors in a patent that make the patent either inoperative or invalid. 35 U.S.C. § 251 (2006). Possible errors are defective drawings, a defective specification, or the patentee claiming more or less than the patentee had a right to claim. <u>Id.</u> During this process, the patentee may add new claims or correct claims that were made in error. <u>Id.</u> Moreover, the patentee may broaden claims within two years of the patent's issue date. <u>Id.</u> When reviewing the new application, the PTO reviews the <u>entire</u> patent, not just the claims at issue. <u>See</u> Examination of Reissue, 37 C.F.R. § 1.176(a) (2010); Manual of Patent Examining Procedure § 1445 (8th ed. 2001) (revised July 2010). Accordingly, all claims of the patent, not just those sought to be amended or added, are subject to possible invalidation. Thus, reissue proceedings may be used as an alternative to litigation when a patent is alleged invalid.

Indeed, recently the Federal Circuit affirmed the practice of using reissue proceedings to add dependent claims for the purposes of hedging against possible invalidity. See In re Tanaka, 640 F.3d 1246, 1251-52 (Fed. Cir. 2011). In the event a litigant seeks to avail itself of this hedging alternative, that litigant may request a stay in litigation pending the PTO's action. This stay is not automatic; it is up to the Court to decide if such a stay is best under the facts of that particular case.

In this regard, it is undisputed that a district court has the inherent power to control its docket and stay proceedings. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). While some courts have a policy in favor of granting a stay pending a PTO reexamination or reissue, other courts have recently reconsidered this policy. See Network Appliance, Inc. v. Sun Microsys., Inc., No. 07-06053, 2008 WL 2168917, at *3 (N.D. Cal. May 23, 2008) ("[T]here appears to be a growing concern among at least some judges in this district that, on balance, staying a case even in its early stages pending reexamination has not led to the just, speedy, and efficient management of the litigation, but instead has tended to prolong it without achieving sufficient benefits in simplification to justify the delay."). Irrespective of a policy either way, "[a] court is under no obligation to delay its own proceedings by

yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." NTP, Inc. v. Research In Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) (citing Viskase Corp. v. Am. Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001)).

Thus, courts have discretion to grant a stay when a party requests such a stay because of a pending reexamination or reissue in front of the PTO. In the exercise of this discretion, district courts balance the following three factors (the "Xerox test"): "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); see In re Laughlin Prods. Inc., 265 F. Supp. 2d 525, 530-31 (E.D. Pa. 2003).

B. Analysis

Predictably, the parties dispute each of these factors. Plaintiff contends there will be no prejudice from the stay, that the reissue proceedings will clarify the claims in the Asserted Patents and simplify the litigation here, and the litigation is in its infancy. Defendant contends that it will suffer great harm from a stay, that the reissue proceedings will actually add

to the complexities before the court, and that, at worst, the stage of the litigation is neutral vis-à-vis granting a stay. Accordingly, Defendant urges the Court to deny Plaintiff's motion.

### 1. Prejudice or Clear Tactical Disadvantage to Defendant

The Court first determines if a stay will either prejudice or result in a clear tactical disadvantage to the nonmovant, Defendant here. Plaintiff argues that a stay will not prejudice or disadvantage Defendant. Particularly, it first argues that Defendant has not expended significant resources in the litigation. Indeed, Plaintiff argues a stay might benefit Defendant by conserving time and money spent on litigating claims that may be modified or canceled by the PTO. The Court is not persuaded.

Briefly, and as discussed further below, granting the stay may actually increase the litigation costs to the parties by increasing the number of issues for the Court to address. Plaintiff's reissue proceedings seek to amend several of the asserted claims and add many new dependent claims. See Pl. Br. Exs. C-D. Thus, while the PTO may ultimately find some claims invalid, any modification of existing asserted claims, and the addition of new dependent claims, will increase the issues before the Court by triggering Defendant's intervening rights under 35

to the complexities before the court, and that, at worst, the stage of the litigation is neutral vis-à-vis granting a stay. Accordingly, Defendant urges the Court to deny Plaintiff's motion.

### 1. Prejudice or Clear Tactical Disadvantage to Defendant

The Court first determines if a stay will either prejudice or result in a clear tactical disadvantage to the nonmovant, Defendant here. Plaintiff argues that a stay will not prejudice or disadvantage Defendant. Particularly, it first argues that Defendant has not expended significant resources in the litigation. Indeed, Plaintiff argues a stay might benefit Defendant by conserving time and money spent on litigating claims that may be modified or canceled by the PTO. The Court is not persuaded.

Briefly, and as discussed further below, granting the stay may actually increase the litigation costs to the parties by increasing the number of issues for the Court to address. Plaintiff's reissue proceedings seek to amend several of the asserted claims and add many new dependent claims. See Pl. Br. Exs. C-D. Thus, while the PTO may ultimately find some claims invalid, any modification of existing asserted claims, and the addition of new dependent claims, will increase the issues before the Court by triggering Defendant's intervening rights under 35

U.S.C. § 252 (2006). Therefore, the costs associated with litigation are not certain to decrease, but may increase as a result of the reissue proceedings.

Next, Plaintiff attempts to quell fears of long and drawn out reissue proceedings and resulting prejudice to Defendant from such a delay. It argues that the Manual of Patent Examining Procedure ("MPEP") mandates that examiners act on reissue applications immediately. 37 C.F.R. § 1.176(a); MPEP § 1440. Moreover, when the reissue application involves litigation, the examiner gives that application priority over other reissue applications. MPEP § 1442. Thus, any delay in litigation would be limited.

Defendant, on the other hand, argues there will be significant delay from the reissue proceedings because the pendency for a reissue application is on average five years. See Def. Opp. Br. 7, Ex. 12 (citing Reissue Patent Pendency, Patently-O (Jan. 23, 2011), http://www.patentlyo.com/patent/2011/01/reissue-patent-pendency.html). Plaintiff argues that these statistics are unreliable because they are based upon a blog and unsubstantiated. Pl. Reply Br. 3. Moreover, it argues that the statistics ignore the expedited process for a reissue proceeding in stayed litigation. See MPEP § 1442.

Without addressing Plaintiff's argument to the credibility of Patently-O's data, the five-year wait does not shed light onto the expedited nature of a reissue proceeding during litigation.[1] What is true, however, is that there seems to be no data on-point to support either party's position. Yet, neither can deny that there will be some delay and that such a delay will prejudice Defendant by retaining the specter of litigation while the reissue proceedings are ongoing. See Robbins v. H.H. Brown Shoe Co., No. 08-6885, 2009 WL 2170174, at *1 (S.D.N.Y. June 30, 2009) (concluding that defendant will be prejudiced by reexamination due to possibility that delay could be years); In re Columbia Univ. Patent Litig., 330 F. Supp. 2d 12, 17 (D. Mass. 2004) (explaining that granting stay for reissue proceedings will allow damages to accrue against defendant); see also Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. Iptronics, Inc., et al., No. 10-02863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (finding that infringement actions between competitors can cause market place harm and holding stay would prejudice nonmovant).

In addition to this continuing specter, Plaintiff's broadcast of this litigation during a stay can prejudice

---

[1] One defendant in another district court claims the average time between filing and issuance of a reissue application slightly more than two years. PSC Computer Prods., Inc. v. Foxconn Int'l, Inc., No. 01-6414, 2002 WL 34404630, at * 3 (C.D. Cal. Sept. 25, 2002).

Defendant.  Indeed, one court held that a plaintiff's broadcasting of litigation on its website whilst a stay is ongoing prejudices a defendant by deteriorating a defendant's customer relations.  See Panduit Corp. v. Chatsworth Prods., Inc., No. 04-4765, 2005 WL 577099, at *2 (N.D. Ill. Mar. 2, 2005).  That said, mere allegations of such broadcasting, without more, are not enough for prejudice to arise.  See ASCII Corp. v. STD Entm't USA, 844 F. Supp. 1378 (N.D. Cal. 1994).

Here, it seems the facts are unclear.  While Defendant submits several of what seem to be emails from customers worried about litigation, its own exhibits show that Plaintiff's discussion of litigation against Defendant--in targeted letters--was with Plaintiff's own customers.[2]  The Court, taking all of this evidence in total, finds that Plaintiff's conduct falls short of that in Panduit.  Thus, any prejudice from Plaintiff's

---

[2] Defendant asserts that Plaintiff's customers make up a majority of the market and that by contacting and requiring these customers to pay a licensing fee for using Defendant's products, Plaintiff has prejudiced Defendant. Def. Surreply Br. 3-4. Defendant does not provide any evidence for the fact that Plaintiff's licensees are the majority of the market, and thus, this is merely an allegation. Defendant's only other evidence that Plaintiff did broadcast the instant litigation is an omission in a set of letters between Plaintiff and Defendant.  In the first letter, Defendant makes the statement that Plaintiff discussed the instant litigation with customers and potential customers. See Def. Opp. Br. Ex. 5, at 1.  In the reply letter, Plaintiff does not deny Defendant's original statement. See id. Ex. 6; id. Ex. 7, at 1.  This is not the concrete evidence that was before the court in Panduit--a posting of the infringement suit on a website, and the Court gives it little weight.

possible contacts with potential customers is, without more evidence, minimal.

Finally, the Court is skeptical of the timing of Plaintiff's filing for reissue as it relates to tactical motivation under the first prong of the Xerox test. This Court's scheduling order, ECF No. 30, required the parties to exchange proposed claim constructions by July 29, 2011, and file with the Court a statement of the terms to be construed, with proposed constructions, by August 19, 2011. Plaintiff filed its applications for reissue on the same day. These applications included alterations of claim language to directly contradict Defendant's proposed constructions. Indeed, Plaintiff admits that the proposed claim language in the reissue applications was a direct result of the claim construction dispute in this litigation. See Pl. Br. 4 ("Victaulic's claim construction positions show that Victaulic interpreted many of the claims of the Asserted Patents to have a scope different from Tyco's interpretation. . . . Tyco exercised its statutory right under 35 U.S.C. § 251 . . . to correct these inadvertent errors . . . ."). The timing and advantage of first seeing Defendant's constructions raises some alarm bells that Plaintiff's reissue proceedings are a litigation gambit. To this end, Plaintiff attempts to have the PTO resolve both claim invalidity and

construction.  Invalidity is a proper reason for reissue.[3]  Plaintiff's "clarification" of claim language that mirrors its claim construction, however, seems to be an attempt to avoid an unfavorable claim construction in this Court.  Similarly, a motivation for reissue may be to amend the claims so that the claims more easily conform to the alleged infringing product, making proof of infringement easier.  See Kimberly Moore, et al., Patent Litigation & Strategy 891 (3d ed. 2008).  While this may be a permissible strategy outside of litigation, in this case, Plaintiff's filing for reissues during litigation and directly after the parties' exchange of claim construction contentions shows a clear tactical motivation.

Accordingly, taking the prejudice and tactical disadvantage to Defendant into account, the Court finds the first Xerox factor weighs against granting a stay.

### 2. Simplification of Questions and Trial

In addition to determining what prejudice and tactical disadvantage a stay has to Defendant, the Court must also determine if the stay will simplify the questions before the

---

[3]   Here, Defendant provided Plaintiff with new prior art in its invalidity contentions.  Thus, Plaintiff is partially seeking reissue so the PTO can assess this new art.  When litigation has commenced, the patentee must make the PTO aware and submit any invalidity arguments and prior art unearthed in that litigation not already considered by the PTO.  MPEP § 1442.01.

Court.  In this regard, Plaintiff contends that a stay will (1) streamline claim construction issues for the Court; (2) take advantage of the PTO's expertise in patent examination; and (3) conserve both the Court's and parties' resources.  Defendant, on the other hand, argues exactly the opposite on each point.  Defendant is correct. Here a stay will, on balance, add to the complexities before the Court.

### a. Streamlining claim construction

Plaintiff argues that, by having the PTO rule on its reissue applications, many of the claim disputes will be "mooted or narrowed by the reissue proceedings."  Pl. Br. 10.  Plaintiff seeks to amend several asserted claims and has added dependent claims in its reissue applications.  See Pl. Reply Br. 7; see also Pl. Br. Exs. C-D.  It argues that the proposed amended claims will resolve any ambiguity and will not need construction in this Court.  Pl. Br. 10-11.  This argument is unavailing.

First, though Plaintiff contends that the amended claims will "clarify the scope of disputed claims," this is just an attempt by Plaintiff to have the PTO adopt the constructions it put forth in the Court.  This attempted end run will not simplify matters, for undoubtedly Defendant will contend that

terms within the reissued claims must be construed.[4]  To think that just because the PTO has adopted Plaintiff's construction Defendant would still not seek construction in this Court is speculative at best.  Second, as Plaintiff has added dependent claims, if it asserts any of those claims against Defendant, such claims may also need construction.

Third, and most persuasively, if some claims in the reissued patents are significantly changed--allegedly obviating the need of construction--the Court will likely then have to determine to what extent Defendant is entitled to its statutorily defined intervening rights.  See 35 U.S.C. § 252.  Intervening rights protect potential infringers from liability for reissued patents.  Specifically, if the reissued patent's claims and the previous patent's claims are not "substantially identical," the Court could find Defendant has not infringed.  Id.  In the event that the reissued patents claims and the current asserted claims are "substantially identical," the Court would have to make that determination not only by construing the claims that the parties currently dispute, but also by construing the newly reissued claims.

Plaintiff argues that Defendant's ability to assert the intervening rights defense is speculative, as Defendant could not

---

[4]  Indeed, Defendant's conduct in this case suggests as much as it asks this Court to construe forty-four claims in the Asserted Patents.

know what claims from the reissued patents Plaintiff would assert against Defendant.  Pl. Reply Br. 6-7.  This argument is belied by Plaintiff's own statements that should the Court grant the stay, Plaintiff "will still be able to bring a second patent infringement suit against" Defendant.  Id. 7.  This, in Plaintiff's view, would result in duplicative and needless litigation in this case.  Not necessarily.  Should Plaintiff, after this suit and after reissue proceedings, choose to file a second infringement action again against Defendant, the only re-litigation of the same issues currently before the Court--the currently asserted claims--would be Defendant's intervening rights.  To the extent that such rights are at issue, whichever court adjudicates this second suit would have the benefit of this Court's claim constructions.

Put another way, there are two possible outcomes of the reissue proceedings.  The PTO could issue identical or substantially identical claims.  If this were the case, the Court would just be proceeding right where it left off before the stay, albeit with a significant time delay.  Or, the reissued patent contains new claims that trigger Defendant's intervening rights that would require the Court's analysis.  Neither outcome would decrease the issues before the Court.[5]  See Sighting Sys. Inst.,

---

[5] Both parties make contrasting arguments about the additional prosecution history that would be before the Court after the reissue proceedings.  Whether or not the prosecution

L.L.C. v. Prestige Law Enforcement, Inc., No. 05-1560, 2006 WL 2642184, at *3 (N.D. Tex. Sept. 11, 2006) (holding that intervening rights in reissue proceeding do not simplify issues before court and denying stay); see also Data Network Storage, L.L.C. v. Aberdeen L.L.C., et al., No. 09-658, ECF. No. 145, at 4 (S.D. Cal. Jan. 27, 2010) (same).

    b. PTO's expertise

  Plaintiff also contends that a stay will allow the PTO--with its added expertise--to assess the validity of the Asserted Patents, taking into account both new prior art and arguments brought forth by Defendant.  Indeed, the PTO will have to find the reissued patents' claims valid or invalid.  To the extent that the PTO finds some asserted claims invalid, issues that are before the Court will be mooted.  This mere possibility of invalidity, however, is not enough to grant a stay.  On the other hand, should the PTO find the claims valid, the Court must still rule on the validity of the Asserted Patents if disputed.  Therefore, the reissue proceedings will not--in all likelihood--meaningfully simplify allegations of invalidity.  Cf. Avago, 2011

---

history might become "ambiguous" by the reissue proceedings--as Defendant asserts--is speculative at best.  As the PTO in a reissue proceeding assesses the validity of the entire patent, the prosecution history, in whatever state, will assist the Court during claim construction.  Cf. Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).

15

WL 3267768, at *5 (concluding that although an <u>ex parte</u> reexamination may cancel some claims, the possibility of re-litigating the same issues gives this factor only moderate weight in favor of a stay). Nor will the PTO's review of the newly discovered prior art concretely affect the disposition of Defendant's invalidity contentions, as Plaintiff argues. <u>See</u> <u>Microsoft Corp. v. i4i Ltd. P'ship</u>, 131 S. Ct. 2238, 2251 (2011) (holding that standard of review of patent validity is "clear and convincing evidence" regardless of whether prior art was before PTO). To be sure, a stay may assist Defendant's proof of invalidity because of the undisclosed prior art. <u>See</u> <u>id.</u> at 2251 ("[I]f the PTO did not have all material facts before it . . . [a] challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain."). This distinction, however, carries little weight.

      A simplification of issues relevant for a stay is whether there will be invalidity contentions, not the ease or difficulty of Defendant's proof of invalidity. Thus, the only final clarification of invalidity issues would be the PTO's cancellation of an asserted claim, not the PTO's finding that a

claim is valid.[6]  And, the only definitive resolution of the suit would be the unlikely cancellation of all claims.

        c.    Conservation of resources

Finally, Plaintiff contends a stay would conserve both the Court's and the parties' resources.  It argues that litigating issues that the PTO may resolve is a waste of both time and money.  While the Court finds there is a possibility of some duplicative efforts, that is all it is; a possibility.  Except for the unlikely event that the PTO invalidates all of the asserted claims, the Court will have to either pick up right where it left because the asserted claims are substantially identical, or decide the issue of intervening rights.  See Data Network, No. 09-658, at 4.  Therefore, on balance, a stay will not simplify the issues before the Court, and this factor weighs against granting Plaintiff's motion.

---

[6] In contrast to a reissue proceeding, the finality of an inter partes reexamination proceeding can tip the balance in favor of a stay because these proceedings create finality when determining invalidity.  See Echostar Techs. Corp. v. TiVo, Inc., No. 05-81, 2006 WL 2501494, at *3 (E.D. Tex. July 14, 2006) (discussing that inter parties reexamination proceedings allow both parties to present invalidity arguments and if challenger participates in proceedings it is estopped from arguing that patent is invalid during subsequent litigation).  In this case, however, there is no opportunity for estoppel of Defendant's invalidity arguments.

### 3. Stage of Discovery and Trial Date

Lastly, the Court considers the stage of discovery and the trial date. Here, it is undisputed by the parties that the case vis-à-vis discovery is in its infancy. Nor has the Court set a trial date. While Plaintiff argues that such infancy militates towards granting its motion to stay. Defendant argues that this factor is neutral. Many courts at similar stages of litigation that have granted stays pending PTO action. See Panduit, 2005 WL 577099, at *1; Lutron Elecs. Co., v. Genlyte Thomas Group, L.L.C., No. 03-02702, 2004 WL 953088, at *1 (E.D. Pa. Apr. 30, 2004); see also EchoStar Techs. Corp. v. TiVo, Inc., No. 05-81, 2006 WL 2501494, at *4-5 (E.D. Tex. July 14, 2006) (issuing stay pending reexamination in case post-Markman hearing).[7] Thus, the Court finds this factor does weigh in favor

---

[7] Nevertheless, this does not necessarily mean that early discovery is always a positive for granting a stay. Courts must assess the weight on a case-by-case basis. Indeed, as one district court explained:

> Although the advance nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference--that a suit in the early stages should weigh heavily in favor of a stay--is not true. . . . just as the absence of a negative inference does not create a positive inference, so also the lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay; the lower costs simply indicates the best time to grant a stay is in the early stages of litigation.

Sighting Sys., 2006 WL 2642184, at *4. The Court need not address this possibility here, however, as the first two Xerox factors outweigh the third.

of granting a stay.  Nevertheless, the Court holds that the previous factors combined tip the scales in favor of denying Plaintiff's motion.

In sum, in this particular case, the stage of discovery may weigh in favor of granting Plaintiff's motion.  The simplification of issues from the reissue proceedings, prejudice, and tactical disadvantage to Defendant, however, weigh heavily against granting Plaintiff's motion.  Thus, the three factors taken together weigh against granting Plaintiff's motion.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to stay will be denied.  An appropriate Order will follow.