IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TYCO FIRE PRODUCTS LP      :   CIVIL ACTION
                                 :   NO. 10-4645
    Plaintiff,           :
                                 :
    v.                  :
                                 :
VICTAULIC COMPANY,         :
                                 :
    Defendant.           :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                   JANUARY 5, 2012

## I.   INTRODUCTION

Plaintiff Tyco Fire Products LP ("Plaintiff") brings this patent infringement suit against Victaulic Company ("Defendant").  Plaintiff alleges that Defendant has infringed on two of Plaintiff's patents (the "Asserted Patents"):  (1) United States Patent Number 7,793,736 ("'736 patent"), entitled "Ceiling-Only Dry Sprinkler Systems and Methods for Addressing a Storage Occupancy Fire"; and (2) United States Patent Number 7,819,201 ("'201 patent"), entitled "Upright, Early Suppression Fast Response Sprinkler."  Third Am. Compl. ¶¶ 9, 17, Oct. 27, 2011, ECF No. 57.  Defendant's answer pleads five affirmative defenses and asserts two counterclaims.  Answer to Third Am. Compl. ¶¶ 26-36, Nov. 9, 2011, ECF No. 62.  Before the Court is

Plaintiff's motion to dismiss Defendant's counterclaims for lack of subject matter jurisdiction and to strike Defendant's affirmative defenses of non-infringement and invalidity.

For the reasons discussed below, Plaintiff's motions will be granted in part and denied in part.

## II.  BACKGROUND

Plaintiff filed suit alleging Defendant infringed the '736 and '201 patents on September 14, 2010, subsequently filed an Amended Complaint on September 28, 2010, and further filed a Second Amended Complaint on November 2, 2010.  See ECF Nos. 1, 4, 9.  This Court issued a scheduling order on March 29, 2011.  ECF No. 30.  The parties exchanged proposed claim constructions on July 29, 2011, and they filed a joint statement of terms to be construed with the Court on August 19, 2011.  That same day, Plaintiff filed applications with the U.S. Patent and Trademark Office ("PTO") seeking reissue of both the '736 and '201 patents to correct "inadvertent errors" in the claims of those patents.  Shortly thereafter, Plaintiff moved to stay the present litigation pending the outcome of those reissue proceedings.  ECF No. 41.  The Court denied Plaintiff's motion.  ECF. No. 53.  Then, Plaintiff moved to amend its Complaint once more and did so by stipulation with Defendant.  Plaintiff filed a Third Amended Complaint, the operative complaint, on October 27, 2011.

Plaintiff's Third Amended Complaint claims that its patents are infringed by Defendant's manufacture and sale of the Model LP-46 V4603 K25 Standard Response Storage Upright Sprinklers with varying temperature ratings.  See Third Am. Compl. ¶¶ 13, 21.  Specifically, Plaintiff alleges in Count I that Defendant induced infringement of claim 33 of the '736 patent by making, using, selling or offering for sale the Model LP-46 V4603 K25 Standard Response Storage Upright Sprinkler with a temperature rating of 286° Fahrenheit (the "286° product").  And Plaintiff alleges in Count II that Defendant induced and directly infringed claim 48 of the '201 patent by making, using, selling or offering for sale the Model LP-46 V4603 K25 Standard Response Storage Upright Sprinklers with temperature ratings of 162° and 212° Fahrenheit (the "162° product" and "212° product", respectively).

Defendant acknowledges manufacturing and marketing the products in question, see Answer to Third Am. Compl. ¶¶ 13, 23, but denies Plaintiff's averments of patent infringement.  See id. ¶¶ 14-18, 24-28.  Defendant further raises a series of affirmative defenses and two counterclaims.  These counterclaims seek a declaration that Plaintiff's '736 and '201 patents are invalid for failure to comply with the patentability requirements in 35 U.S.C. §§ 101, 102, 103, 112 and that it has not infringed the '736 and '201 patents.  Id. ¶¶ 35, 36.  After Defendant's

3

answer, Plaintiff filed a motion to dismiss Defendant's counterclaims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) alleging that Defendant's counterclaims do not present an Article III "case or controversy."  In particular, Plaintiff provided a unilateral covenant not to sue Defendant on the now-unasserted claims of the '736 and '201 patents.  Pl.'s Reply Br. in Supp. of Mot. to Dismiss 3, Dec. 15, 2011, ECF No. 72.  This motion is now fully briefed and ripe for disposition.


## III. STANDARD OF REVIEW

Plaintiff moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that the Court lacks subject matter jurisdiction.  In particular, Plaintiff argues that Defendant's counterclaims for declaration of invalidity and non-infringement do not present an Article III "case or controversy." U.S. Const. art. II, § 2.  When a party challenges the factual basis for the Court's jurisdiction, the Court is "not confined to the allegations in the complaint . . . and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000). Defendant, as the counterclaimant here, has the burden to prove that subject matter jurisdiction exists.  Benitec Austrl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007).

4

**IV.  DISCUSSION**

Plaintiff moves to dismiss Defendant's counterclaims of non-infringement and invalidity.  Plaintiff also moves to strike Defendant's affirmative defenses of non-infringement and invalidity.[1]  For the reasons that follow, the Court will grant in part and deny in part both of Plaintiff's motions.

A.  Applicable Law

The federal courts are courts of limited jurisdiction. See U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ."). The Court may not issue an advisory opinion wherein "a genuine adversary issue between the parties" does not exist.  See United States v. Johnson, 319 U.S. 302, 304 (1943).  But under the Declaratory Judgment Act, the Court may declare the rights of an interested party in the case of an "actual controversy."  28 U.S.C. § 2201(a) (2006).  The U.S. Supreme Court has provided the following guidance:

---

[1]    Defendant has failed to address Plaintiff's motion to strike its affirmative defenses.  Therefore, the Court will grant Plaintiff's motion as unopposed to the same extent that the Court will grant Plaintiff's motion to dismiss Defendant's counterclaims.  Defendant shall have leave to amend its answer.

Our decisions have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (internal citations and quotation marks removed). The Court has "'unique and substantial discretion in deciding whether to declare the rights of litigants.'"  Id. (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).

Defendant, the party seeking declaratory relief, shoulders the burden of establishing the existence of an actual case or controversy.  See Benitec, 495 F.3d at 1344.  A charge of patent infringement establishes a case or controversy adequate to support jurisdiction.  Id.  But, "an actual controversy must be extant at all stages of review."  Id. at 1345.  If jurisdiction is challenged after an action commences, the burden of proof remains with the party seeking to assert jurisdiction under the Declaratory Judgment Act.  See id.  Moreover, courts assess jurisdiction on each patent claim individually, not the patent as

a whole.  <u>Jervis B. Webb Co. v. S. Sys., Inc.</u>, 742 F.2d 1388, 1399 (Fed. Cir. 1984).[2]


B.    <u>Analysis</u>

As Plaintiff has amended its complaint to limit its infringement contentions to two discrete patent claims, Plaintiff's motion requires the Court to reconcile two competing and equally forceful policies.  First, that a plaintiff is the master of its complaint.  And second, the right of a defendant to seek a declaratory judgment enabling it to proceed free from the Damoclean sword of liability.  <u>See</u> <u>MedImmune</u>, 549 U.S. at 134 ("The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III.").  Defendant, as the party that bares the burden of persuasion, argues that despite Plaintiff's Third Amended Complaint, its counterclaims of invalidity and non-infringement present a "case or controversy."  Specifically, Defendant first contends that its counterclaims were filed in response to three earlier versions of Plaintiff's Complaint and Plaintiff's subsequent amendments cannot divest the Court of jurisdiction as

---

[2]    While the Court recognizes that <u>Jervis</u> was decided pre-<u>MedImmune</u>, nothing in <u>MedImmune</u> suggests that courts are not to assess jurisdiction on a claim-by-claim basis.

Defendant has carried its burden under MedImmune.  Second, Defendant argues that Plaintiff's covenants not to sue cannot divest this Court of jurisdiction because Plaintiff's covenants are not sufficiently broad to remove a case or controversy.[3]

When assessing these arguments, the Court takes a two-step approach.  First, the Court determines if, after Plaintiff's Third Amended Complaint, there exists a case or controversy with respect to Defendant's counterclaims.  Then, in the event that a case or controversy does exist, the Court must determine if Plaintiff's covenants not to sue divest the Court of jurisdiction.

### 1.   Defendant Has Carried Its Burden Under MedImmune

The Court first analyzes what effect, if any, Plaintiff's Third Amended Complaint has on the Court's jurisdiction over Defendant's counterclaims.  Then, the Court determines whether Defendant has carried its burden under MedImmune to show an Article III case or controversy.  After

---

[3]   Defendant also argues that it only stipulated to Plaintiff filing its Third Amended Complaint because Plaintiff stated that the filing of the Third Amended Complaint "was without prejudice as to Victaulic's continuing assertion of any and all defenses, affirmative defenses and counterclaims . . . ." Def.'s Br. in Opp'n to Pl.'s Mot. to Dismiss Ex. 8.  Defendant argues that by filing its motion to dismiss, Plaintiff has "reneged" on this stipulation.  Regardless of whatever agreement the parties may have had, it is beyond dispute that the parties could never stipulate to subject matter jurisdiction.  Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18 (1951).

performing this analysis, the Court finds that Defendant has carried this burden.

### a.   Effect of Plaintiff's amended complaint

As a threshold matter, Defendant's counterclaims aver that it has not infringed either of the Asserted Patents and that both of the Asserted Patents are invalid.  Answer to Third Am. Compl. ¶¶ 35, 36.  By failing to allege that specific claims of the Asserted Patents are not infringed or invalid in its counterclaims, Defendant counterclaims that all claims of the Asserted Patents are invalid and not infringed.  Defendant asks the Court to assess every claim of the Asserted Patents. Therefore, the Court must find whether there is a case or controversy involving the entire patent because jurisdiction must be assessed on a patents' claims individually.  See Jervis, 742 F.2d at 1399.

In this regard, Defendant first argues that Plaintiff's past Complaints did not limit infringement to discrete claims and that its counterclaims were a response to these broad infringement allegations.  See, e.g., Second Amend. Compl. ¶ 14, Nov. 2, 2010, ECF No. 9 ("Defendant Victaulic has contributorily infringed and is contributorily infringing the [']736 patent, and in particular, at least claims 1 and 2 . . . ."); id. ¶ 24 ("Defendant Victaulic has directly infringed and is directly

infringing the [']201 patent, and in particular, at least claim
44 . . . ."). And because Defendant asserted its counterclaims
in response to these past complaints, there is still a live case
or controversy before the Court with respect to Defendant's
contentions that the Asserted Patents are invalid and that
Defendant does not infringe the Asserted Patents. The Court
finds Defendant's arguments persuasive.

Within the declaratory judgment framework, not only
must there be a case or controversy at the start of the case, but
this case or controversy must continue throughout the case.
Benitec, 495 F.3d at 1345. As Plaintiff's Third Amended
Complaint is the operative complaint, the Court must look to this
Complaint to ascertain Plaintiff's allegations. In this Third
Amended Complaint, Plaintiff only avers that Defendant infringed
one claim of each of the Asserted Patents. See Third Am. Compl.
¶¶ 14, 22. Defendant's answer, however, still counterclaims that
the Asserted Patents are invalid and not infringed in their
entirety. See Answer to Third. Am. Compl. ¶¶ 35, 36. On the
face of this Third Amended Complaint alone, there is not a case
or controversy with respect to Defendant's counterclaims.
Plaintiff's allegation that Defendant infringed two discrete
claims, one in each patent, is insufficient to present a real
controversy over the entirety of the Asserted Patents. To this
end, Plaintiff urges the Court that this ends the Court's

10

inquiry--its amendment is sufficient to divest the Court of jurisdiction.  Plaintiff's argument is unavailing.

Plaintiff's limitation that Defendant infringed two discrete patent claims in its Third Amended Complaint does not, ipso facto, divest this Court of jurisdiction.  See Hoffman-La Rouche Inc. v Mylan Inc., No. 09-01692, 2009 WL 4796736, at *6 (D.N.J. Dec. 9, 2009); see also Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 624 (Fed. Cir. 1984) ("Shelcore removed the issue of infringement of claim 13 from the trial court's consideration.[]  But Shelcore could not unilaterally remove the validity issue because Durham's counterclaim put validity of all the claims in issue.").  Plaintiff's Third Amended Complaint is just one piece of evidence for the Court to weigh when determining if Defendant has carried its burden under MedImmune. And, the Court cannot ignore Plaintiff's previous infringement allegations in its previous Complaints.  To do so would be inconsistent with the policy goal of the Declaratory Judgment Act--to allow parties, such as Defendant, to operate without the specter of suit.

Indeed, courts consider the totality of the circumstances, including actions before the operative complaint and activity between the parties before any complaint was filed, when assessing if declaratory judgment jurisdiction is proper. See MedImmune, 549 U.S. at 127 ("Basically, the question in each

11

case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1382 (Fed. Cir. 2007) (holding that pre-complaint licensing discussions, despite promise not to sue, sufficient to find Article III jurisdiction).  Thus, the Court takes into consideration not only Plaintiff's Third Amended Complaint--and its limitation of infringement contentions--but also Plaintiff's averments in its previous complaints.  Indeed, Defendant must show in the totality of the circumstances an actual controversy remains for the unasserted patent claims sufficient to support jurisdiction for a declaratory judgment.

           b.    Whether Defendant has carried its burden
                 under MedImmune

        In regard to this burden, the Court holds that, under the facts of this case, Defendant has carried its burden under MedImmune.  Plaintiff, by alleging general infringement before the Third Amended Complaint, has shown a real and immediate controversy for purposes of jurisdiction.  Cf. Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V., 528 F.3d 1365, 1382-83 (Fed. Cir. 2008) (holding that the defendant's counterclaims for invalidity and non-infringement of the patent-in-suit justiciable

despite the plaintiff only asserting limited claims against the defendant).  At this point in the Court's analysis of Plaintiff's motion, nothing would preclude Plaintiff from reasserting the now-unasserted patent claims.  Plaintiff argues that it would be precluded from doing so by the doctrine of claim preclusion.  This argument is unavailing because claim preclusion only occurs after final judgment.  New Hampshire v. Maine, 532 U.S. 742, 748 (2001).  It is far too speculative to say that there will be a final judgment on the merits in this case.

Thus, in the totality of the circumstances, Plaintiff's actions have shown a real and immediate controversy between the parties with respect to the Asserted Patents to the extent that Defendant should not have to "take[] a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."  SanDisk Corp., 480 F.3d at 1381.  Such a result balances the competing policies involved in this case--that Plaintiff is the master of its complaint and Defendant's rights under the Declaratory Judgment Act.[4]  Accordingly, the Court holds that there is an actual controversy with respect to

---

[4]     While this result may lead to plaintiffs filing more limited complaints and subsequently amending to include additional claims of infringement, see Hoffman, 2009 WL 4796736, at *6, an opposite result fails to consider how limiting general infringement contentions in an amended complaint, by itself, fails to limit the specter of infringement allegations that have already been alleged.

Defendant's counterclaim of invalidity and non-infringement of the Asserted Patents.

### 2.   Plaintiff's Covenants Not to Sue

Despite Defendant's ability to carry its burden under MedImmune, Plaintiff attempts to divest this Court of jurisdiction by covenanting not to sue Defendant with respect to the unasserted claims.  Plaintiff, in its reply in support of its motion to dismiss, covenants not to sue Defendant on any of the non-asserted claims of the '736 and '201 patents.  Pl.'s Reply Br. in Supp. of Mot. to Dismiss 3.  Specifically, Plaintiff covenants the following:

> [1.] Tyco will not sue Victaulic for infringement under 35 U.S.C. § 271(b) of claims 1-32 and 34-47 of the '736 Patent based on based on [sic] Victaulic's past, present or future actions with respect to Victaulic's Model LP-46 V4603 K25 Standard Response Storage Upright Sprinkler having a 286° Fahrenheit temperature rating

> [2.] Based on Tyco's understanding that Victaulic does not itself install or design systems that incorporate the accused device, Tyco stipulates that Victaulic's current activity with respect to Victaulic's Model LP-46 V4603 K25 Standard Response Storage Upright Sprinkler having 286° Fahrenheit temperature rating under its current approvals does not infringe the claims of the '736 Patent under 35 U.S.C. § 271(a) and (c); and

> [3.] Tyco will not sue Victaulic for infringement of claims 1-47 and 49-51 of the '201 Patent based [sic] Victaulic's past, present or future actions with respect to Victaulic's Model LP-46 V4603 K25

> Standard Response Storage Upright Sprinkler having
> temperature ratings of 162° and 212° Fahrenheit.

Pl.'s Reply Br. in Supp. of Mot. to Dismiss 3.  Such covenants,

even in a brief to the Court, are sufficient to bind Plaintiff

and extinguish any actual controversy.  See Super Sack Mfg. Corp.

v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995).

Whether a covenant not to sue divests the Court of

jurisdiction, however, depends upon the scope of the covenant.

See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d

1294, 1297 (Fed. Cir. 2009).  To remove jurisdiction over a

declaratory judgment, the covenant need only cover past and

present activities that are potentially infringing or future

infringing activities of sufficient immediacy and reality.  See

Benitec, 495 F.3d at 1345-46.  Moreover, the covenant or its

equivalent need not cover the entire patent, but can be only for

discrete patent claims.  See, e.g., Frontline Techs., Inc. v.

CRS, Inc., No. 07-2457, slip. op. at 13-14 (E.D. Pa. Dec. 22,

2011) (Robreno, J.) (summarizing state of the law and collecting

cases).  Further, it is axiomatic that if a covenant not to sue

is to divest a court of jurisdiction, it must be clear,

unambiguous, and enforceable.

15

a.   <u>Plaintiff's covenant not to sue for the '201 patent</u>

In this case, Plaintiff provides both ambiguous--and thus unenforceable--and unambiguous covenants not to sue.  Taking the unambiguous first, Plaintiff's third covenant states that "Tyco will not sue Victaulic for infringement of claims 1-47 and 49-51 of the '201 Patent based [sic] Victaulic's past, present or future actions with respect to Victaulic's Model LP-46 V4603 K25 Standard Response Storage Upright Sprinkler having temperature ratings of 162° and 212° Fahrenheit."  Pl.'s Reply Br. in Supp. of Mot. to Dismiss 3.  This is a clear statement that Plaintiff will not sue Defendant for infringement of the '201 patent with respect to the accused 162° and 212° products and it is sufficient to divest this Court of jurisdiction.[5]

Defendant's contention that the covenant does not cover its future products and, therefore, its future product

---

[5]    Defendant argues, unpersuasively, that Plaintiff's third covenant does not include Defendant's 286° product.  While that is true, and nothing within the covenant would prevent Plaintiff from alleging infringement of the '201 patent by the 286° product, Defendant has failed to meet its burden under <u>MedImmune</u>.  There is no evidence of record to show that Defendant's 286° product might infringe the '201 patent.  There was no communication by Plaintiff that the 286° product infringes the '201 patent and none of Plaintiff's previous complaints have alleged as much.  Accordingly, Defendant has put forth no evidence for the Court to conclude that there is a real and immediate controversy regarding infringement of the '201 patent by the 286° product.  <u>See</u> <u>MedImmune</u>, 549 U.S. at 127.

16

development will be clouded if the Court grants Plaintiff's motion is without merit. Defendant provides insufficient evidence that it will develop future products and puts forth no actual evidence that such development is underway nor that such future products might infringe the Asserted Patents. Indeed, the only evidence Defendant provides consists of a single paragraph in the declaration of Lawrence W. Thau, Jr., Defendant's Chief Technical Officer. Specifically, Mr. Thau declares that "Victaulic is continuously conducting product development and testing in the field of dry ceiling-only sprinklers for storage facilities, which is the subject of this case." Def. Br. in Opp'n to Pl.'s Mot. to Dismiss Ex. 1, Thau Decl. ¶ 11 . Such a general statement of product development is insufficient for the Court to find jurisdiction. See Frontline, slip op. at 14 n.7; see also Cat Tech L.L.C. v. TubeMaster, Inc., 528 F.3d 871, 880 (Fed. Cir. 2008) ("If a declaratory judgment plaintiff has not taken significant, concrete steps to conduct infringing activity, the dispute is neither 'immediate' nor 'real' and the requirements for justiciability have not been met."); Dodge-Regupol, Inc. v. RB Rubber Prods., Inc., 585 F. Supp. 2d 645, 651 (M.D. Pa. 2008) ("[Defendant's] fear of litigation over future products does not preclude [Plaintiff's] covenant not to sue from eliminating subject matter jurisdiction with respect to [Defendant's] declaratory claims."). Therefore, Plaintiff's

covenant not to sue divests this Court of jurisdiction over

Defendant's counterclaims of non-infringement and invalidity of

all claims of the '201 patent.[6]

    b.   Plaintiff's covenant not to sue for the '736
         patent

    On the other hand, with respect to Count I of

Plaintiff's Third Amended Complaint, the allegations of

infringement of the '736 patent by Defendant's 286° product,

Plaintiff's covenant fails to divest the Court of jurisdiction.

Plaintiff's covenant, in particular covenant two, conditions its

---

[6]    Defendant makes several less forceful arguments as to
why jurisdiction is proper, each are unavailing.  Defendant
argues that Plaintiff has made threats to its customers that they
are infringing the '736 and '201 patents, without regard to
specific patent claims.  Thus, Defendant argues, to the extent
that Plaintiff made general threats, Defendant could be liable
for contributory and induced infringement of the patents in
total.  While in other cases such facts can be enough for a case
or controversy, see Arris Grp. Inc. V. British Telcomms. PLC, 639
F.3d 1368, 1375-76 (Fed. Cir. 2011), Plaintiff has made its
statement that it will not sue Defendant as to any unasserted
claims of the '201 patent.  Thus, even if Plaintiff did sue
Defendant's customers on an unasserted claim from the '201
patent, Plaintiff would still be estopped from alleging that
Defendant contributorily infringed or induced infringement.

    Defendant also argues that an actual controversy exists
because it is required to indemnify customers for infringement.
While this is indeed one situation that the court in Arris
identified, Defendant has not produced sufficient evidence of
record.  All Defendant has produced is one email from one
customer inquiring about possible indemnification.  See Def.'s
Br. Ex. 7.  There is no statement that Defendant has signed an
agreement of any kind.  This naked assertion is insufficient to
meet Defendant's burden of persuasion.

statement in several ways that makes this covenant ambiguous.
First, Plaintiff states that it is only covenanting not to sue
based upon its "understanding that Victaulic does not itself
install or design systems that incorporate the accused device."
Pl.'s Reply Br. in Supp. of Mot. to Dismiss 3.   To the extent
that Plaintiff misunderstands Defendant's actions, this covenant
is non-binding.  Second, and more to the point, Plaintiff only
covenants not to sue with respect to the 286° product at the
present time and under that 286° product's "current approvals."
See id. at 3 ("Tyco stipulates that Victaulic's current activity
with respect to Victaulic's Model LP-46 V4603 K25 . . . .").
Covenants not to sue must cover at least past and present
products, something that Plaintiff's second covenant does not.
Moreover, Defendant has put forth evidence that the 286° product
was, after this litigation began, approved for additional uses
and, therefore, Plaintiff's covenant on its face is inapplicable
to the 286° product as it has new approvals.  See Def.'s Surreply
Br. in Opp'n to Pl.'s Mot. to Dismiss Ex. 12, Dec. 21, 2011, ECF
No. 76.  Therefore, Plaintiff's covenant not to sue Defendant for
direct or contributory infringement under its second covenant, is
not clear, unambiguous, and enforceable to the extent that the
Court can conclude that Defendant could not be sued for

19

infringement.[7]  Without such guarantee, Plaintiff's covenant
cannot divest the Court of jurisdiction.  Accordingly, the Court
holds that Defendant's counterclaim of non-infringement and
invalidity of the '736 patent presents an Article III case or
controversy.[8]

## VI.  CONCLUSION

          For the foregoing reasons, the Court will grant
Plaintiff's motions to dismiss and strike in part and deny it in
part, with leave for Defendant to file an amended answer to

---

[7]      In contrast to Plaintiff's ambiguous covenant, the
Court recently held in another case a covenant not to sue
divested the Court of jurisdiction over the defendant's
counterclaims of invalidity and non-infringement.  Frontline,
slip op. at 14.  There, the covenant was clear and unambiguous to
the extent that Frontline could no longer sue CRS for
infringement.  See Frontline, slip op. at 6 ("Frontline hereby
unconditionally covenants not to sue CRS for direct, induced or
contributory infringement under any claim of the 519 Patent or
any claim that may be issued as a result of the Reexamination
proceeding based upon CRS's manufacture, use, importation, sale,
or offer of sale of any SubFinder System on, before or after the
Covenant Date . . . .").  Here, Plaintiff's addition of
conditions to its covenant falls short of this clarity.

[8]      As adjudication under the Declaratory Judgment Act is
discretionary, the Court will not exercise its discretion and
dismiss Defendant's counterclaims that have presented an Article
III case or controversy.  See Genentech v. Eli Lilly & Co., 998
F.2d 931, 937 (Fed. Cir. 1993), overruled on other grounds by
Wilton v. Seven Falls Co., 515 U.S. 277 (1995) ("When there is an
actual controversy and a declaratory judgment would settle the
legal relations in dispute and afford relief from uncertainty or
insecurity, in the usual circumstance the declaratory action is
not subject to dismissal.").

Plaintiff's Third Amended Complaint.  An appropriate order shall
follow.